UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COTO SETTLEMENT, a corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>IAN EISENBERG, an individual, and OLYMPIC COMMUNICATIONS, INC., a corporation,<br><br>　　　　　Defendants. | CASE NO. C08-125RSM<br><br>ORDER DENYING PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION AND GRANTING DEFENDANTS' MOTION TO DISMISS |

　　This matter is before the Court for consideration of plaintiff's motion for a preliminary injunction (Dkt. # 27) and defendants' motion to dismiss (Dkt. # 28). After thorough consideration of the motions, the memoranda of the parties, and the balance of the record the Court shall, for the reasons set forth below, deny the motion for a preliminary injunction and grant the motion to dismiss.

## BACKGROUND

　　This matter arises from a separate lawsuit that was litigated in this Court, *Federal Trade Commission v. Cyberspace.Com, LLC, et al.*, C00-1806RSL. In that matter, the Court found the named defendants (Cyberspace.com, French Dreams, Coto Settlement, Electronic Publishing Ventures, Olympic Telecommunications, Inc., Ian Eisenberg, and Chris Hebard) jointly and severally liable for redress for injury to consumers in the amount of $17,676,897. C00-1806RSL, Dkt. # 245. After the Federal Trade

ORDER - 1

1  Commission collected a total of $2,847,168.03 from various defendants[1], it moved for leave to deposit
2  the funds into the registry of the Court pending notification to injured consumers.  The motion was
3  granted on June 16, 2006.  *Id.*, Dkt. # 299.
4      Subsequently, in the fall of 2007, the Federal Trade Commission and defendants Ian Eisenberg
5  and Olympic Telecommunications, Inc., moved jointly for release of a portion of the funds as unneeded
6  for satisfaction of the redress order.  C00-1806RSL.  The motion was granted, over the objections of co-
7  defendants Chris Hebard and Coto Settlement, and the Court directed that the sum of $1,400,000 be
8  released to the Federal Trade Commission for transfer to defendants Ian Eisenberg and Olympic
9  Telecommunications, Inc.  *Id.*, Dkt. # 328.  The Court noted that "[t]o the extent Coto Settlement has a
10 viable claim against Olympic Telecommunications, this is not the proper forum in which to resolve the
11 dispute."  *Id.*
12     The following day, January 8, 2008, Chris Hebard and Coto Settlement filed this suit in King
13 County Superior Court, asserting causes of action for breach of fiduciary duties, conversion, unjust
14 enrichment, and others, against Ian Eisenberg and Olympic Telecommunications, Inc., ("Olympic").  Dkt.
15 # 1-4, pp. 7-14.  The same day, plaintiffs Chris Hebard and Coto Settlement obtained from the state
16 court a temporary restraining order, ordering defendants Ian Eisenberg and Olympic to place the
17 $1,400,000 into the registry of the King County Superior Court.  Dkt. # 1-4, p. 84.  Two weeks later, on
18 January 25, 2008, defendants removed the state court action to this Court.  On January 30, 2008,
19 Hebard and Coto filed a motion in the C00-1806RSL action to modify the Court's ruling as to
20 disbursement of the $1,400,000 to Eisenberg and Olympic.  C00-1806, Dkt. # 329.  The Court denied
21 the motion, noting that "[a]s far as this Court is concerned, the $1,400,000 that was disbursed from this
22 Court's registry belongs to the Eisenberg defendants," but also finding that the money was no longer
23 within the Court's possession or control in that case.  C00-1806RSL, Dkt. # 337.
24     Defendants appeared and filed an answer in this case, and also filed a motion to dismiss.  Dkt. ##
25 7, 8.  Plaintiffs then moved for leave to file an amended complaint in this action, omitting Chris Hebard

---

[1] $2,782,207.85 of this amount was paid by Eisenberg and Olympic.  C00-1806RSL.

ORDER - 2

as a plaintiff, and modifying some of the original allegations. Dkt. # 17. The motion was granted, and defendants' then-pending motion to dismiss was stricken as moot. Dkt. # 25. The parties then filed the motions which are presently before the Court: plaintiff's motion for a preliminary injunction (Dkt. # 27) and defendants' motion to dismiss the amended complaint (Dkt. # 28). The Court shall first address the motion to dismiss, together with plaintiff's motion to strike, which was filed as a surreply. Dkt. # 53.

ANALYSIS

Defendants have moved for dismissal of the amended complaint for failure to state a claim, pursuant to Fed.R.Civ.Proc. 12(b)(6). This court has jurisdiction to consider the matter pursuant to 28 U.S.C. § 1332(a)(1).[2]

The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.*, 108 F. 3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F. 3d 1370, 1374 (9th Cir. 1994). The court is not required, however, to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

I. Motion to Strike

Before turning to the substance of defendant's motion to dismiss, the Court must address plaintiff's motion to strike. Plaintiff asks that the Court strike two arguments which it asserts were raised for the first time in defendants' reply. Dkt. # 53. As to the argument regarding corporate continuance statutes, the motion shall be GRANTED. However, as to the judicial estoppel argument, the Court notes that defendants asserted in the introduction to their motion to dismiss that "[a]ll of Plaintiff's claims fail as

---

[2] Although defendant Eisenberg is a Washington resident and under the "forum defendant rule" may not remove the matter to this Court, the Ninth Circuit Court of Appeals has held that this is a procedural rather than a jurisdictional defect, and was waived by plaintiffs' failure to object. 28 U.S.C. § 1441(b); *Lively v. Wild Oats Markets, Inc.,* 456 F. 3d 933, 942 (9th Cir. 2006).

ORDER - 3

a matter of law because they are barred by the statutes of limitations, Plaintiff lacks standing to raise them in this lawsuit, and Plaintiff is judicially estopped from asserting facts to the contrary." Defendants' Motion to Dismiss, Dkt. # 28, p. 3. Plaintiff's motion to strike the judicial estoppel argument is therefore DENIED.

The Court need not, however, actually apply judicial estoppel to reach the result it does here. Judicial estoppel is an equitable doctrine that precludes a party from taking an inconsistent position. Application of the doctrine is restricted to cases "where the court relied on, or 'accepted', the party's previous inconsistent position." *Hamilton v. State Farm Fire & Casualty Co.*, 270 F. 3d 778, 782 (9th Cir. 2001). Defendants assert that this doctrine precludes plaintiff from changing the facts asserted in the original complaint. However, as will be explained below, plaintiff did not substantially change the facts asserted in the amended complaint. Rather, plaintiff drew certain legal conclusions from those facts. These legal conclusions need not be regarded by the Court as "true" in considering the motion to dismiss. *Clegg,* 18 F.3d at 754-55.

The Court has taken judicial notice of the pleadings and Orders filed in this case and the underlying case, C00-1806RSL, in setting out the factual background of this case. The Court may take judicial notice of the pleadings in a related action without converting a motion to dismiss into a motion for summary judgment. See *MGIC Indenture Corporation v. Weisman*, 803 F. 2d 500, 504 (9th Cir. 1986) (holding that the district court properly took judicial notice of pleadings filed in a prior action in deciding a motion to dismiss); *Mack v. South Bay Beer Distributers*, 798 F. 2d 1279, 1282 (9th Cir. 1986) ( "on a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment" ); see also *Lee v. city of Los Angeles*, 250 F. 3d 668, 688-89 (9th Cir. 2001) ( "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion .... There are, however, two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion .... [The second of these is that] under Fed.R.Evid. 201, a court may take judicial notice of matters of public record " (internal quotations

ORDER - 4

omitted)).

This rule provides that "a judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 210, subd. (b) (West 2006). Further, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed.R.Evid. 210, subd. (d) (West 2006). A court may take judicial notice of the existence of matters of public record, such as a prior order or decision, but not the truth of the facts cited therein. *See Lee,* 250 F. 3d at 689-90.

II. Motion to Dismiss

The relevant factual allegations in the amended complaint are as follows:

**A. The Marketing Programs and the EPV Entities**

7. During or about 1998, Christopher L. Hebard ("Hebard") and Eisenberg began working together to market internet services. To this end, they created Electronic Publishing Ventures, L.L.C. ("EPV"). EPV was owned 50% each by Coto and French Dreams Investments, N.V. ("French Dreams"). Hebard is a beneficiary of Coto, and Eisenberg is believed to have some sort of ownership or beneficial interest in French Dreams.

8. EPV was a holding company which owned 100% of the following entities: 1) Cyperspace.Com L.L.C [sic] ("Cyberspace"); 20 Essex Enterprises, L.L.C. ("Essex"); 3) Surfnet Services, L.L.C. ("Surfnet"); and 40 Splashnet.Net, L.L.C. ("Splashnet'). Cyberspace, Essex, Splashnet, and Surfnet are hereinafter referred to collectively as the "EPV Entities". Eisenberg and Hebard shared general supervisory and oversight over the EPV Entities.

9. The payments for the internet services offered by the EPV Entities were collected through telephone billings. To collect through telephone billings, the EPV Entities used an "aggregator," which is a business that assembles and processes the large amount of billing data, transmits such data to the various telephone companies, and collects the payments from the telephone companies.

10. Most of the billings by the EPV Entities were handled by Olympic, an aggregator which was owned or controlled by Eisenbrg and used primarily in connection his [sic] internet pornography business interests. Olympic, as the aggregator, held reserves from the EPV

ORDER - 5

Entities in an amount necessary to cover contingent liabilities associated with the marketing programs.

**B. The Demise of the Marketing Programs and the FTC Action**

11. The marketing programs conducted by the EPV Entities were unsuccessful. A dispute arose between Hebard and Eisenberg, and they shut the programs down in the summer of 2000. Also in the summer of 2000, Eisenberg announced to Hebard that he was increasing the reserves held by Olympic to 100%. That is, 100% of all funds collected by Olympic of any of the EPV Entities would be held as reserves. At the time, Hebard objected to this action; <u>however in retrospect, Defendants [sic] actions were proper given the liability to the Federal Trade Commission (the "FTC") which would subsequently be assessed.</u>

12, On October 20, 2000, the FTC filed an action against the EPV Entities, Eisenberg, French Dreams, Hebard and Coto. The action was filed in the United States District Court for the Western District of Washington and assigned Case No. C00-1806L (the "FTC Action"). The Honorable Robert S. Lasnik presided over the FTC Action. After the FTC Action was filed, the parties attempted to settle. On December 14, 2000, Eisenberg sent Hebard a statement showing that Olympic had reserves in the amount of approximately $5 million <u>for the EPV Entities. These reserves were the property of the EPV Entities held in trust by Olympic.</u>

**Dissolution of the EPV Entities**

13. <u>While the FTC Action was pending, the EPV Entities were all dissolved under state law. Thus, under well established corporate law, the ownership rights in the reserve funds passed to the ultimate shareholders, Coto and French Dreams.</u>

**Resolution of the FTC Action**

14. The FTC Action was ultimately resolved with an adverse judgment against all defendants. Judge Lasnik issued an order dated March 17, 2004 which found all defendants liable in the amount of $17,676,896.00. However, Judge Lasnik further held that the liability of the defendants would be reduced by the amount of consumer redress which he ordered the FTC to conduct. Judge Lasnik also ordered the defendants to tender to the FTC funds to pay the consumer redress and directed that if "there are additional funds remaining in the account that money should be returned to Defendants."

ORDER - 6

   15. Hebard tendered to the FTC all non-exempt assets which amounted to approximately s $80,000.  Eisenberg and Olympic paid a total of $2,782,207.85 to the FTC.  <u>Defendants have admitted in pleadings in the FTC Action that $2,152,694 of this amount was paid by Olympic.  The funds paid by Olympic, however, were the property of the EPV Entities which Olympic held in trust.  Given that the EPV Entities were also found liable, it was proper for the Defendants to turn over the EPV Entities' reserves to the FTC.</u>

   <u>16.  Despite the large finding of potential liability by Judge Lasnik, the ultimate actual liability to the FTC turned out to be relatively small.  During or about the Fall of 2007, the FTC indicated that the funds deposited were more than adequate to cover liability under the consumer redress.  Accordingly, a refund could be expected</u>.

First Amended Complaint, Dkt. #26, ¶¶ 7-16 (emphasis supplied to indicate allegations which were added by amendment of the complaint). Those portions of ¶ 11 regarding the propriety of Olympic's action in holding 100 % of the funds as reserves, ¶ 12 regarding creation of a trust, ¶ 13 regarding passage of the ownership right to the funds, and ¶ 15 regarding the funds held "in trust" and the propriety of Olympics actions in turning them over to the FTC all represent legal conclusions rather than factual allegations, and need not be accepted by the Court as true in deciding the motion to dismiss.

Defendants contend, as the first basis for their motion to dismiss, that this action was filed well after the statute of limitations. The parties are in agreement that the three-year statute of limitations set forth in RCW. 4.16.080 applies to all causes of action asserted by defendants.  Therefore the success of defendants' argument depends on a determination as to when the statute of limitations began to run. Under appropriate circumstances, as here, the court may be able to determine this time as a matter of law. *Haslund v. City of Seattle*, 86 Wash. 2d 607, 620 (Wash. 1976).   In making this determination the Court is viewing only the material facts as they have been set forth in the amended complaint.

The general rule is that "a cause of action accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief." *Id.* at 619.  Defendants contend that the statute of limitations began to run in the summer of 2000, when, according to the amended complaint, "A dispute arose between Hebard and Eisenberg and they shut the program down. . . . Eisenberg announced to Hebard that he was increasing the reserves held by Olympic to 100 %.  That is, 100% of all funds

ORDER - 7

collected by Olympic of any of the EPV Entities would be held as reserves." Amended Complaint, ¶ 11. The complaint further states that "at the time, Hebard objected to this action. . . ." *Id.* Thus, according to defendants, the cause of action accrued in the summer of 2000 because Hebard knew or should have known at that time of the essential elements of the cause of action. *White v. Johns-Manville Corp.*, 103 Wash. 2d 334, 338 (1985). Plaintiff Coto, as part owner of the EPV Entities, could have sued at that time for wrongful withholding of the funds by Olympic.

Plaintiff, in response, asserts that the cause of action did not accrue until the fall of 2007, presumably when defendants Eisenberg and Olympic filed a joint motion with the FTC for release from the Court's registry of the $1,400,000 at issue here. *See*, C00-1806RSL, Dkt. # 322. Plaintiff argues,

> In the present case, Olympic's actions as to the EPV Entities' reserve funds were proper until the Fall of 2007. First, Olympic properly set aside reserves to cover the contingent liabilities of the marketing program. Second, Olympic properly turned over these reserves pursuant to Judge Lasnik's order. Not until the Fall of 2007 did Defendants act in a manner which could be construed as a repudiation of Coto's rights to the EPV Entities' reserves. At that time, Defendants refused to give an accounting and sought to obtain possession of the reserves to the exclusion of Coto's rights in the monies.

Plaintiff's Response, Dkt. # 32, ¶ 21.

This argument mischaracterizes the factual allegations set forth in ¶¶ 10 -11 of the amended complaint. There, plaintiff alleged that Olympic withheld reserves from the EPV Entities "in an amount necessary to cover contingent liabilities associated with the marketing programs." Amended Complaint, ¶ 10. Then, **after** the EPV Entities' marketing programs were deemed unsuccessful, **after** they were shut down, and **after** the dispute arose between Hebard and Eisenberg, Olympic raised the reserves to 100%, thus retaining all of the money collected by the EPV Entities. *Id.*, ¶ 11. Hebard objected **at that time**. *Id*. The fact that those reserves were **later** used to pay part of the liability owed to the FTC for consumer redress could not render Olympic's actions in retaining 100% of the EPV Entities' money---months before the FTC lawsuit was even filed---proper. Plaintiff's statement that "in retrospect, Defendants [sic] actions were proper given the liability to the Federal Trade Commission (the "FTC") which would

ORDER - 8

subsequently be assessed" is not a factual allegation but a conclusory statement with no basis in the facts actually stated in the amended complaint. Such retrospective rationalizations cannot revive an expired statute of limitations.

Plaintiff's inclusion of this conclusory (and illogical) statement in the amended complaint is a clear attempt to avoid the statute of limitations, which had been asserted as an affirmative defense in defendants' answer to the original complaint, and as a basis for dismissal in defendants' first motion to dismiss. Dtk. # 7, pp. 7-8; Dkt. # 8, p. 7, ¶ 1.3. This conclusory statement need not be accepted by the Court as true in considering defendants' motion to dismiss. *Clegg,* 18 F.3d at 754-55.

The Court finds that, on the material facts alleged in the amended complaint, plaintiff's causes of action accrued in the summer of 2000 when Olympic raised the reserves to 100%, thereby retaining all of the EPV Entities' money. The parties agree that the applicable statute of limitations on all of plaintiff's causes of action is three years, pursuant to RCW 4.16.080. This action, filed in January of 2008, is therefore barred by the statute of limitations.

## CONCLUSION

Defendants' motion to dismiss on the basis of the statute of limitations is GRANTED, and this action is hereby DISMISSED. The Court does not reach the merits of defendants' other arguments asserted in support of dismissal. In light of this ruling, the Court finds that plaintiff's motion for a preliminary injunction shall be DENIED.

Dated this 24th day of October, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 9